United States District Court
Southern District of Texas
FILED
NOV 1 3 2009
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-03247 |
| | § | |
| $19,540.00 IN U.S. CURRENCY | § | |
| Defendant. | § | |

### VERIFIED CLAIM TO DEFENDANT PROPERTY

Henry Sanchez Albernia, pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, files this verified claim asserting an interest in the defendant property and contesting the forfeiture *in rem*.

1. The property claimed is the defendant property, $19,540.00 in U.S. Currency (the "Property"), in the above-captioned action.

2. I, Henry Sanchez Albernia, am the claimant to the Property, and I, along with my wife, am the owner of the Property.

3. I am a citizen of Colombia and reside at Highway 26, No. 18-64, Apt. 402C, Bucaramanga, Santander, Colombia. Copies and translation of my and my wife's passports and visas are attached as Exhibit "1".

4. My wife, Jazmin Dueñas Rodríguez, and I own and operate a women's clothing business called De Colores Fashion, located at Highway 33, # 51-85, Bucaramanga, Colombia. A copy and translation of our most recent business license renewal are attached as Exhibit "2". Copies of photos of the front of the store are

attached as Exhibit "3". A copy and translation of a certificate from our landlord are attached as Exhibit "4".

5. The Property comes from sales made at our business. As our business is small and family operated, we use our personal bank accounts for business deposits and withdrawals. This is common in Colombia. While some of the Property comes from recent transactions that were not deposited into our bank accounts, some of it comes from deposits made months earlier. Copies and translations of my wife's bank statements reflecting this part of the Property are attached as Exhibits "5".

6. I entered the United States with my wife on September 1, 2009 from Bogotá, Colombia to Houston, Texas, aboard Continental Airlines flight # 885, en route to Los Angeles, California. My wife and I were carrying the Property when we entered.

7. When visiting California, I sometimes purchase clothing from wholesalers in the Los Angeles area for our store in Colombia. I can get very good deals in Los Angeles, especially if I pay with cash.

8. I was planning on using the Property to make such purchases.

9. I did not declare the Property because I wanted to avoid the processing time for such a declaration. I then became frightened and panicked when asked about the Property by the Border Protection Officers. I have never had any issues or problems with the Border Protection Officers before.

10. After the Property was seized in Houston, Texas, I continued my trip to Los Angeles, California and made some wholesale purchases using my credit cards. A copy of purchases on my credit card bills are attached as Exhibit "6". Internet

attached as Exhibit "3". A copy and translation of a certificate from our landlord are attached as Exhibit "4".

5. The Property comes from sales made at our business. As our business is small and family operated, we use our personal bank accounts for business deposits and withdrawals. This is common in Colombia. While some of the Property comes from recent transactions that were not deposited into our bank accounts, some of it comes from deposits made months earlier. Copies and translations of my wife's bank statements reflecting this part of the Property are attached as Exhibits "5".

6. I entered the United States with my wife on September 1, 2009 from Bogotá, Colombia to Houston, Texas, aboard Continental Airlines flight # 885, en route to Los Angeles, California. My wife and I were carrying the Property when we entered.

7. When visiting California, I sometimes purchase clothing from wholesalers in the Los Angeles area for our store in Colombia. I can get very good deals in Los Angeles, especially if I pay with cash.

8. I was planning on using the Property to make such purchases.

9. I did not declare the Property because I wanted to avoid the processing time for such a declaration. I then became frightened and panicked when asked about the Property by the Border Protection Officers. I have never had any issues or problems with the Border Protection Officers before.

10. After the Property was seized in Houston, Texas, I continued my trip to Los Angeles, California and made some wholesale purchases using my credit cards. A copy and translation of my credit card bills are attached as Exhibit "6". Internet

pages (in English) describing the businesses from which I made purchases are attached as Exhibit "7".

11. I am truly sorry for not declaring the Property when I entered the United States. I understand that I should have declared it, and that I should have been straightforward with the Border Protection Officers when asked about the Property. I also understand that under the circumstances, forfeiture of the Property is not mandatory.

12. Our business is a small, family owned operation, and the Property is a very significant amount of money to us and our business. It would be a great hardship to lose the Property over such a foolish mistake that I will never make again. I make this claim to the Property, because I do not believe that forfeiture is warranted in this matter.

Respectfully submitted,

Henry Sanchez Albernia
Claimant

## VERIFICATION

I, Henry Sanchez Albernia, Claimant, declare under penalty of perjury as provided by 28 U.S.C. § 1746 that I have read this Verified Claim to Defendant Property, and the facts stated in this claim are true and correct to the best of my knowledge and belief.

Executed on November 11, 2009.

_____
Henry Sanchez Albernia